# EXHIBIT "A"

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Federal Home Loan Mortgage Corporation; Cenlar, FSB; Owen Financial Corporation; Cal-Western Reconveyance Corporation;

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Charles Collins, an individual; Kandhy Collins, an individual

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

2011 JAN 10 PM 2:25

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: San Diego Superior Court
*(El nombre y dirección de la corte es):*

250 Main Street
El Cajon CA 92020

**CASE NUMBER:**
*(Número del Caso):*
37-2011-00065078-CU-OR-EC

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Daniel Forde, Hoffman & Forde, Attorneys at Law
5755 Oberlin Dr Suite 301 San Diego CA 92121

DATE:
*(Fecha)* January 10, 2011    JAN 10 2011    Clerk, by *(Secretario)* R. PALOU  , Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Owen Financial Corporation

under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 1/24/11

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
American LegalNet, Inc.

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

All Persons Unknown Claiming Any Legal Title or Equitable Right, Title, Estate, Lien or Interest in the Property Described in the Complaint Adverse to Plaintiff's Title or Any Cloud on Plaintiff's Title Herein; and Does 1 through 99, inclusive.

Page _____ of _____

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

American LegalNet, Inc.
www.FormsWorkflow.com

Daniel Forde, Esq. (SBN: 248461)
HOFFMAN & FORDE, ATTORNEYS AT LAW
5755 Oberlin Drive, Suite 301
San Diego, CA 92121
Tel: (858) 750-1630
Fax: (858) 750-1902

Allan Cate, Esq. (SBN: 248526) .
LAW OFFICE OF ALLAN O. CATE
503 N. Hwy 101, Suite C
Solana Beach, CA 92075
Tel: (858) 692-1035
Fax: (858) 228-9885

Attorney for Plaintiffs ,
Charles Collins and Kandhy Collins

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO, EAST COUNTY DIVISION

| | |
|---|---|
| CHARLES COLLINS, an individual; KANDHY COLLINS, an individual;<br><br>Plaintiffs ,<br><br>v.<br><br>FEDERAL HOME LOAN MORTGAGE CORPORATION; CENLAR, FSB; OWCEN FINANCIAL CORPORATION; CAL-WESTERN RECONVEYANCE CORPORATION; ALL PERSONS UNKNOWN CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATÉ, LIEN OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS 'S TITLE OR ANY CLOUD ON PLAINTIFFS 'S TITLE HEREIN; and DOES 1 through 99, inclusive;<br><br>Defendants. | Case No.:  37-2011-00063078-CU-OR-EC<br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:<br><br>1. BREACH OF CONTRACT;<br>2. BREACH OF FIDUCIARY DUTY;<br>3. UNJUST ENRICHMENT;<br>4. QUIET TITLE;<br>5. VIOLATION OF CIVIL CODE SECTION 2923.6;<br>6. VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200 ET SEQ.; AND<br>7. VIOLATION OF CIVIL CODE SECTION 2924.<br><br>[JURY TRIAL DEMANDED] |

- 1 -

COMPLAINT

COMES NOW, Plaintiffs Charles Collins and Kandhy Collins ("Plaintiffs" or "Collins"), demanding a jury trial, and based on personal knowledge and on information and belief allege as follows:

### THE SUBJECT PROPERTY

1.      At all times relevant herein, Plaintiffs owned and lived in their single family residence, a detached home, located at 384 Paloma Lane, El Cajon, California 92021 (APN: 509-256-11) ("Subject Property").

### PARTIES AND VENUE

2.      Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION ("Freddie Mac"), is a publicly traded government-sponsored enterprise chartered by Congress to purportedly stabilize the nation's residential mortgage markets and expand opportunities for homeownership and affordable rental housing by purchasing mortgage loans from approved lenders. Freddie Mac was placed into conservatorship by its regulator, the Federal Housing Finance Agency in September of 2008. Freddie Mac is doing business in the State of California, County of San Diego.

3.      Defendant CENLAR, FSB ("Cenlar"), operates as a sub servicer and wholesale bank in Trenton, New Jersey. Cenlar purportedly offers central loan administration and reporting, and subservice loans for residential loan portfolios. Cenlar is a business entity with an unknown charter doing business in the State of California, County of San Diego.

4.      Defendant OCWEN FINANCIAL CORPORATION ("Ocwen"), is a provider of residential and commercial mortgage loan servicing, special servicing and asset management services. Ocwen is a business entity with an unknown charter headquartered in West Palm Beach, Florida with offices in Arizona, California, Florida, Georgia, Illinois and New York and global operations in Canada, Germany and India. Ocwen is doing business in the State of California, County of San Diego.

- 2 -

COMPLAINT

5.      Defendant CAL-WESTERN RECONVEYANCE CORPORATION ("Cal-Western") is a provider of foreclosure, reconveyance and post-foreclosure services and provides the lending and loan servicing community with non-judicial foreclosure services in Alaska, Arizona, California, Hawaii, Idaho, Nevada, Oregon, Texas, Utah & Washington. Cal Western is a business entity with an unknown charter doing business in the State of California, County of San Diego.

5.      The defendants named herein as "all persons unknown claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiffs 's title or any cloud on Plaintiffs 's title herein," named as Does 1 through 99, inclusive, are unknown to Plaintiffs at the present time. These defendants, and each of them, claim some right, title, estate, lien, or interest in the below-described Property adverse to Plaintiffs' title, and such claim may constitute a cloud on Plaintiffs' title thereto. Such claim or claims are without any right whatever and these defendants have no right, title, estate, lien, or interest whatever in the below-described Property or any part thereof. Plaintiffs therefore sue said defendants by such fictitious names and will seek leave of court to amend this Complaint to set forth their true names and capacities thereof, when the same has been ascertained.

6.      Defendants, and each of them, were and are agents, servants, representatives, and/or employees of each of the other defendants herein, and were at all times acting within the course and scope of such agency, representation and employment and with the permission and consent of each of said defendants.

7.      Wherever appearing in this complaint, each and every reference to defendants and to any of them, is intended to be and shall be a reference to all defendants hereto, and to each of them, named and unnamed, including all fictitiously named defendants, unless said reference is otherwise specifically qualified.

8.      Plaintiffs reserve the right to assert additional violations of law as documents and information related to the transaction(s) are produced in the course of discovery in this action.

9.      Venue is proper in the County of San Diego under Code of Civil Procedure

- 3 -

COMPLAINT

Sections 392 and 395 because this action results from foreclosure on a mortgage on real property located in San Diego County, this action arises out of an offer or provision of a loan intended primarily for personal family or household use in San Diego County, and the alleged acts herein occurred in San Diego County. Further, one or more of the defendants maintains executive offices in this County, a substantial portion of the transactions and wrongs complained of herein, including the defendants' participation in the wrongful acts occurred in this County, and defendants have received substantial compensation in this County by doing business here and engaging in numerous activities that had an effect in this County.

## FACTUAL ALLEGATIONS

10.     In or about 1986, Plaintiffs purchased the Subject Property with a trust deed from Downey Savings and Loan ("Downey"). The loan was an adjustable rate mortgage with an interest rate that would change, usually in response to changes in the Treasury Bill rate or the prime rate. The purpose of the interest rate adjustment was purportedly to bring the interest rate in line with market rates and permit borrowers to lower their initial payments in exchange for assuming the risk of interest rate increases in future years. In or about 2004, Chase Manhattan Bank ("Chase") refinanced Plaintiffs' loan. That same year, the loan was again purportedly sold by Chase, this time to Taylor, Bean & Whitaker Mortgage Corp. ("Taylor Bean").

11.     In 2009, due to personal and financial hardships caused in large-part by the national financial crisis, Plaintiffs realized they would not be able to afford the monthly mortgage payments associated with their loan. Plaintiffs quickly contacted Taylor Bean to ask about potential options to reduce their monthly mortgage payments. Plaintiffs were informed about potential loan modification options that were available to them under the federal government's Making Homes Affordable program.

12.     Plaintiffs submitted extensive documentation to Taylor Bean. This documentation provided proof of Plaintiffs' personal and financial hardships and their inability to pay their current monthly mortgage payments. Approximately three months after providing this information to Taylor Bean, an agreement was reached whereby Plaintiffs' loan would be "modified" resulting in monthly mortgage payments that Plaintiffs could afford. Plaintiffs

- 4 -

COMPLAINT

waited for representatives at Taylor Bean to send final documentation to finalize their loan modification.

13.     A month later, on or about August 18, 2009, Plaintiffs received information indicating that Cenlar had purportedly been either transferred the contract to service Plaintiffs loan or had purchased Plaintiffs' loan. When Cenlar was purportedly assigned the rights to service Plaintiffs' loan and/or purportedly purchased Plaintiffs' loan, Cenlar was thereby delegated the duty to modify that loan pursuant to the agreement between Plaintiffs and Taylor Bean.

14.     After this transfer, Plaintiffs attempted to communicate frantically with Cenlar to inquire as to the status of their final loan modification agreement documentation. During the majority of these calls, Cenlar representatives could not speak recognizable English and could provide Plaintiffs with no answers. Eventually, after demanding to speak with someone who could communicate in their native tongue, Plaintiffs were told Cenlar had no paperwork indicating that a loan modification agreement had been reached. On or about September 14, 2009, Plaintiffs received a letter from Cenlar regarding Cenlar's poor customer service. In this letter Cenlar "apologized" for not to properly communicating with Plaintiffs and failing to follow up with Plaintiffs loan modification request. During a call with Cenlar shortly after receiving this letter, Plaintiffs were told they would be sent the necessary forms to once again apply for a loan modification and that Cenlar would attempt to locate the lost paperwork and loan modification agreement that Plaintiffs had entered into with Taylor Bean.

15.     Despite their promises, Cenlar did not send any loan modification documentation and did not locate the agreement Plaintiffs had reached with Taylor Bean.

16.     Rather, on or about February 22, 2010, Plaintiff received word that Ocwen had purportedly been either transferred the contract to service Plaintiffs loan or had purchased Plaintiffs' loan. When Ocwen was purportedly assigned the rights to service Plaintiffs' loan and/or purportedly purchased Plaintiffs' loan, Ocwen was thereby delegated the duty to modify that loan pursuant to the agreement between Plaintiffs and Taylor Bean. After receiving this information, Plaintiffs immediately attempted to contact Ocwen to discuss their loan

- 5 -

COMPLAINT

modification options and determine whether Ocwen would honor the loan modification agreement they had reached with Taylor Bean. Plaintiffs repeated phone calls were unsuccessful. Each time Plaintiffs called, they would receive a recorded message asking Plaintiffs to leave their contact information. When Ocwen would "call back" there was just another recorded message telling Plaintiffs to call yet another, different phone number. Over the course of the next six months, Plaintiffs attempted to communicate with representatives from Ocwen without any success.

17.    Congress passed the Emergency Economic Stabilization Act of 2008 on October 3, 2008 and amended it with the American Recovery and Reinvestment Act of 2009 on February 17, 2009 (together, the "Act"). 12 U.S.C.A. §5201 et. seq. (2009). The purpose of the Act is to, among other things, grant the Secretary of the Treasury the authority to restore liquidity and stability to the financial system, and ensure that such authority is used in a manner that "protects home values" and "preserves homeownership." 12 U.S.C.A. §5201. On February 18, 2009, pursuant to their authority under the Act, the Treasury Secretary and the Director of the Federal Housing Finance Agency announced the Making Home Affordable program. The Making Home Affordable program consists of two subprograms. The first subprogram related to the creation of refinancing products for individuals with minimal or negative equity in their home, known as the Home Affordable Refinance Program. The second subprogram relates to the creation and implementation of a uniform loan modification protocol, known as HAMP. HAMP is funded by the federal government, primarily with funds made available through the Act. The Treasury Department has allocated at least $75 billion to HAMP. Under HAMP, the federal government incentivizes servicers to enter into agreements with struggling homeowners that will make adjustments to existing mortgage.

18.    On information and belief, defendants Ocwen and Freddie Mac accepted billions of dollars in funds from the United States Government as part of the Troubled Asset Relief Program ("TARP") created as a result of the Act. Further, on information and belief, Freddie Mac signed a contract with the U.S. Treasury agreeing, among other things, to participate in the Making Home Affordable Program, a program in which Ocwen received incentive payments for

- 6 -

COMPLAINT

providing affordable mortgage loan modifications and other alternatives to foreclosure to borrowers such as Plaintiffs. As a participating servicer Ocwen had a duty to provide all borrowers with a thorough and good faith review of their loan modification options.

19. On information and belief, Plaintiffs' loan and, based on her personal financial situation, Plaintiffs themselves, qualified for loan modification assistance under HAMP and/or other loan modification options available at the time Plaintiffs sought assistance – including, but not limited to the "Freddie Mac HAMP Backup Modification." Plaintiffs, for their part, complied with the requirements of HAMP and other loan modification programs by submitting the required documentation and communicating with their lender(s) in a timely manner. In violation with their duties under HAMP and to Plaintiffs' as fiduciaries, defendants have ignored their obligations to give this client's file the review good faith review that it deserves to make a determination as to whether Plaintiffs' loan qualified for HAMP or whether other loss mitigation options were available and postpone the trustee sale on the Subject Property.

20. In spite of Plaintiffs' efforts and compliance with oral agreements with Taylor Bean, defendants have ignored their contractual obligation(s) to modify Plaintiffs' loan.

21. Specifically, despite reaching an agreement to modify their loan with Taylor Been in early 2009, on or about July 23, 2010, Plaintiffs received a notice of default. The notice of default claimed that Plaintiffs needed to pay over $385,000 or their home would be foreclosed.

22. Thereafter, on or about October 28, 2010, Plaintiffs received a notice of trustee Sale. The notice of trustee sale stated the Subject Property would be sold "on November 17, 2010 at 10:00 a.m...via public auction to the highest bidder...at the entrance to the East County Regional Center by the statue, 250 E. Main Street, El Cajon, California....." The notice of default was never posted in a conspicuous place on the Subject Property. :

23. Plaintiffs also examined a local periodical "The Californian" to find information about the sale of the Subject Property. In the section titled "Calpublic Notices" Plaintiffs again saw the Subject Property was to be sold "on November 17, 2010 at 10:00 a.m...via public action to the highest bidder... at the entrance to the East County Regional Center by the statue, 250 E. Main Street, El Cajon, California....."

-7-

COMPLAINT

24.    On November 17, 2010, at 10:00 a.m., plaintiff Charles Collins was at the entrance to the East County Regional Center by the statue, 250 E. Main Street, El Cajon, California. Mr. Collins dutifully studied the area and looked and listened for anyone conducting an auction. Mr. Collins did not see anyone selling properties by the statue despite his best efforts.

25.    Upon contacting defendant Cal-Western Plaintiffs were informed via recorded message the sale of the Subject Property had allegedly been "moved" to December 1, 2010, at 10:00 a.m. at the entrance to the East County Regional Center by the statue, 250 E. Main Street, El Cajon, California.

26.    On December 1, 2010 at 10:00 a.m. plaintiff Charles Collins again went to the entrance to the East County Regional Center by the statue, 250 E. Main Street, El Cajon, California. Again, Mr. Collins dutifully studied the area and looked and listened for anyone conducting an auction. Once again, Mr. Collins did not see anyone selling properties by the statue despite his best efforts.

27.    Notwithstanding the foregoing, on or about December 2, 2010, Plaintiffs received a call from an attorney asserting to represent defendant Freddie Mac. This counsel stated that defendant Freddie Mac purportedly "purchased" the Subject Property on December 1, 2010.

28.    Thereafter, on December 7, 2010, Plaintiffs received a letter from counsel for Freddie Mac Rosenthal, Withem & Zeff. This letter stated that Freddie Mac supposedly "owned" the Subject Property "as the result of foreclosure." The letter continued that Freddie Mac would "proceed with an eviction proceeding to obtain possession of the (Subject Property)."

29.    Defendant Freddie Mac, through its agent defendant Cal-Western, instituted a non-judicial foreclosure proceeding to foreclose on a deed of trust as to the Subject Property which mortgage was, on information and belief, originally issued in the name of non-party Chase, the originating "lender" on the note securing the deed of trust.

30.    Defendant Freddie Mac has presumably taken the unverified position, through its counsel, that non-party Taylor Bean previously assigned the mortgage issued by Taylor Bean as to the Subject Property to defendant Freddie Mac.

- 8 -

COMPLAINT

31.    Despite these presumed contentions, no such assignment has ever been produced to Plaintiffs, and defendant Freddie Mac has failed to prove or even take the position that it is the holder of all rights under the note secured by the deed of trust – which is the instrument of indebtedness which would permit the legal holder thereof to declare a default which would trigger a foreclosure.

32.    As such, defendant Freddie Mac has not demonstrated that it has suffered an actual or threatened injury as a consequence of any default, which distinct and palpable injury is legally in order for defendant Freddie Mac to satisfy the legal prerequisite to prove that it has a sufficient personal stake in and legal standing to institute the sale of the Subject Property.

### FIRST CAUSE OF ACTION

### Breach of Contract

### (Against defendants Cenlar, Ocwen and Freddie Mac)

33.    Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

34.    Plaintiffs, for their part, complied with the requirements of HAMP and/or other loan modification programs offered by Taylor Bean and via certain oral agreements Plaintiffs entered into a valid and binding contract with Taylor Bean to modify the terms of their loan.

35.    When defendants Cenlar, Ocwen and Freddie Mac were purportedly assigned the rights to service Plaintiffs' loan and/or purportedly purchased Plaintiffs' loan, defendants were thereby delegated the duty to modify that loan pursuant to the agreement between Plaintiffs and Taylor Bean.

36.    Defendants Cenlar, Ocwen and Freddie Mac breached these agreements by failing to work in good faith with Plaintiffs to modify their existing loans and by foreclosing prematurely. On information and belief, defendants Cenlar, Ocwen and Freddie Mac never intended to comply with their contractual commitments and instead engaged in a course of conduct to frustrate Plaintiffs' ability to take other steps to move on with their lives such as short selling, filing bankruptcy or finding other means to avoid foreclosure. Further, on information and belief, certain defendants had entered into credit default swap contract(s) with other

- 9 -

COMPLAINT

businesses and/or entities related to Plaintiffs' loan ("CDS"). The purpose of the CDS was, among other things, to manage the risk of default inherent in Plaintiffs' loan. Due to the terms of the CDS, certain defendants were incentivized to foreclose on the Subject Property rather than work with Plaintiffs find other loss mitigation options. Specifically, if Plaintiffs' loan went into default, the proceeds from the CDS would cancel out certain defendants' losses on the underlying debt. Thus, certain defendants would receive more money in a foreclosure than they would if Plaintiffs continued making modified mortgage payments. As a result of defendants Cenlar, Ocwen and Freddie Mac's conduct, they have been unjustly enriched by late fees and/or foreclosure fees.

37. As a result of defendants Cenlar, Ocwen and Freddie Mac's breach(es) of contract Plaintiffs have suffered monetary and other damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### Breach of Fiduciary Duty

### (Against defendants Cenlar, Ocwen and Freddie Mac)

38. Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

39. At all times relevant, defendants Cenlar, Ocwen and Freddie Mac and each of them created, accepted and acted in a fiduciary relationship of great trust and acted for the benefit of Plaintiffs.

40. On information and belief Plaintiffs allege that defendants Cenlar, Ocwen and Freddie Mac owed and owe Plaintiffs fiduciary duties. By reason of their fiduciary relationship, defendants Cenlar, Ocwen and Freddie Mac owed and owe Plaintiffs the highest obligations of good faith, fair dealing, loyalty and due care in all their dealings with Plaintiffs as well as a duty to keep Plaintiffs adequately and accurately informed on all issues regarding the their loan, their loan modification request and the trustee sale date of the Subject Property. Defendants Cenlar, Ocwen and Freddie Mac and each of them breached the fiduciary duty owed to Plaintiffs as they have acted and continue to act for their own benefit and to the detriment of Plaintiffs.

41. Among other things, defendants Cenlar, Ocwen and Freddie Mac and each of

- 10 -

COMPLAINT

them have failed to adhere to their obligations to provide a good faith review of Plaintiffs' requests for loan modification. These actions were done without due care for the protection of Plaintiffs' rights.

42. As a direct and legal result of said breach of fiduciary duty, Plaintiffs have suffered economic damage and potential loss of the Subject Property resulting in damages according to proof at trial. On information and belief, defendants Cenlar, Ocwen and Freddie Mac never intended to comply with their fiduciary commitments and oral promises to Plaintiffs and instead engaged in a course of conduct to frustrate Plaintiffs' ability to take other steps to move on with her life such as short selling, filing bankruptcy or finding other means to avoid foreclosure. Further, due to the terms of the CDS, certain defendants were incentivized to foreclose on the Subject Property rather than work with Plaintiffs find other loss mitigation options. Specifically, if Plaintiffs' loan went into default, the proceeds from the CDS would cancel out certain defendants' losses on the underlying debt. Thus, certain defendants would receive more money in a foreclosure than they would if Plaintiffs continued making modified mortgage payments. As a result of defendants Cenlar, Ocwen and Freddie Mac's conduct, they have been unjustly enriched by late fees and/or foreclosure fees.

43. Defendants Cenlar, Ocwen and Freddie Mac and each of them acted willfully, maliciously, oppressively, and in conscious disregard of the rights of Plaintiffs and their fiduciary duties. As such Plaintiffs are entitled to punitive damages.

## THIRD CAUSE OF ACTION

### Unjust Enrichment

### (Against All Defendants)

44. Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

45. In taking the aforementioned actions, defendants and each of them, directly or indirectly, were paid monies or took property that was unjustified.

46. Defendants are therefore in possession of money and property that belongs to the Plaintiffs and they have deprived Plaintiffs of its possession, use and enjoyment. On information

- 11 -

COMPLAINT

and belief, defendants' never intended to comply with their commitments and numerous promises and instead engaged in a course of conduct to frustrate Plaintiffs's ability to take other steps to move on with her life such as short selling, filing bankruptcy or finding other means to avoid foreclosure. Further, due to the terms of the CDS, certain defendants were incentivized to foreclose on the Subject Property rather than work with Plaintiffs find other loss mitigation options. Specifically, if Plaintiffs' loan went into default, the proceeds from the CDS would cancel out certain defendants' losses on the underlying debt. Thus, certain defendants would receive more money in a foreclosure than they would if Plaintiffs continued making modified mortgage payments. As a result of defendants' conduct, defendants have been unjustly enriched by late fees and/or foreclosure fees.

47.     As a direct and legal result of the defendants' misconduct, Plaintiffs sustained actual, special and consequential damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### Quiet Title to Real Property

### (Against All Defendants)

48.     Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

49.     That Plaintiffs seek a quiet title action against the claims of defendants and each of them in the Subject Property more specifically described hereinabove.

50.     That the claims of defendants, and each of them, are without any right, title, ownership or interest whatsoever and that defendants, and each of them, have no right, title or interest in the Property, and that any alleged title obtained by the within defendants and each of them, was obtained through breach of contract, by wrongful acts, unconscionable and inequitable practices and breach of fiduciary duties.

51.     As defendant Freddie Mac had no legal standing to institute or maintain a foreclosure of the Subject Property, any claims to the Subject Property of all defendants herein are without any right, title, ownership or interest whatsoever.

52.     That Plaintiffs seek quiet title as of the date of this lawsuit is filed on any and all

- 12 -

COMPLAINT

interests of the within defendants in said Subject Property.

## FIFTH CAUSE OF ACTION

### Violation of Civil Code Section 2923.6

### (Against defendants Cenlar, Ocwen and Freddie Mac)

53.    Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

54.    That defendants Cenlar, Ocwen and Freddie Mac have failed to adhere to the provisions of Civil Code section 2923.6 requiring a good faith attempt at modification of the subject loan by committing the acts described herein. Specifically, defendants Cenlar, Ocwen and Freddie Mac and each of them have failed to adhere to their obligations to provide a good faith review of Plaintiffs' request for loan modification and failed to postpone the trustee sale of the Subject Property as they promised to do. In this regard, despite the fact that Plaintiffs qualified for loan modification under HAMP and/or other loan modification alternatives, defendants Cenlar, Ocwen and Freddie Mac did not attempt to modify Plaintiffs' loan or discuss with Plaintiffs alternatives other than foreclosure.

55.    That Plaintiffs have been damaged, in an amount to be proven at trial, by defendants Cenlar, Ocwen and Freddie Mac's failure to adhere to the provisions of Civil Code 2923.6.

## SIXTH CAUSE OF ACTION

### Violation of California Unfair Business Practices Act

### (Against All Defendants)

56.    Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

57.    Given the various alleged misrepresentation, wrongful acts, unconscionable and inequitable practices, breach of fiduciary duties, and failure to adhere to relevant statutory law alleged, defendants have also violated California Business and Professions Code § 17200 et seq. by engaging in unfair business practices that was intended to and did frustrate Plaintiffs 's ability to take other steps to move on with her life such as short selling, filing bankruptcy or finding

- 13 -

COMPLAINT

other means to avoid foreclosure. Further, due to the terms of the CDS, certain defendants were incentivized to foreclose on the Subject Property rather than work with Plaintiffs find other loss mitigation options. Specifically, if Plaintiffs' loan went into default, the proceeds from the CDS would cancel out certain defendants' losses on the underlying debt. Thus, certain defendants would receive more money in a foreclosure than they would if Plaintiffs continued making modified mortgage payments. As a result of defendants' conduct, defendants have been unjustly enriched by late fees and/or foreclosure fees.

58. Plaintiffs are therefore entitled to the remedies allowed pursuant to Business and Professions Code § 17200 et seq.

### SEVENTH CAUSE OF ACTION

#### Violation of Civil Code Section 2924

#### (Against defendants Freddie Mac and Cal-Western)

59. Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

60. That defendants have failed to adhere to the provisions of Civil Code section 2924f(b)(1) requiring the notice of trustee sale to state the date, time and street address and the specific location where the trustee sale will be held. Specifically, although the notice of trustee sale stated the Subject Property would be sold "on November 17, 2010 at 10:00 a.m...via public action to the highest bidder... at the entrance to the East County Regional Center by the statue, 250 E. Main Street, El Cajon, California..." no such sale occurred on that date. Further, while defendant Cal-Western purported "moved" the trustee sale to December 1, 2010 at 10:00 a.m. at the same location, no such sale occurred on that date either. Finally, the notice of default was never posted on the Subject Property in violation of Civil Code section 2924f(b).

61. That defendants have failed to adhere to the provisions of Civil Code section 2924g(a), (d) requiring the trustee to publicly announce the postponement, the reason for the postponement, and the future date, time and place of sale at the time and location of the sale specified in the notice of trustee sale. Specifically, although the notice of trustee sale stated the Subject Property would be sold "on November 17, 2010 at 10:00 a.m...via public action to the

- 14 -

COMPLAINT

highest bidder... at the entrance to the East County Regional Center by the statue, 250 E. Main Street, El Cajon, California..." the trustee was not present and did not announce the postponement or the future date, time and place of the sale.

62.     That as a result of these significant statutory violations, defendants Freddie Mac and Cal-Western discouraged prospective bidders – including Plaintiffs – that may have hoped to bid cash at the trustee sale of the Subject Property.

63.     That the trustee sale is void and Plaintiffs seek quiet title as of the date of this lawsuit is filed on any and all interests of the within defendants in said Subject Property.

64.     That Plaintiffs have been damaged, in an amount to be proven at trial, by defendants' failure to adhere to the provisions of Civil Code 2924.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

### ON THE FIRST CAUSE OF ACTION

(Against defendants Cenlar, Ocwen and Freddie Mac)

1.     For general, special, statutory, punitive and actual damages according to proof at trial;

2.     For consequential and incidental damages;

3.     For costs of suit incurred herein; and

4.     For such other and further relief as the court may deem just and proper.

### ON THE SECOND CAUSE OF ACTION

(Against defendants Cenlar, Ocwen and Freddie Mac)

1.     For general, special, statutory, and actual damages according to proof at trial;

2.     For consequential and incidental damages;

3.     For reasonable attorney's fees and costs of suit incurred herein; and

4.     For such other and further relief as the court may deem just and proper.

### ON THE THIRD CAUSE OF ACTION

(Against All Defendants)

1.     For general, special, statutory, and actual damages according to proof at trial;

- 15 -

COMPLAINT

2.    For consequential and incidental damages;

3.    For reasonable attorney's fees and costs of suit incurred herein; and

4.    ·For such other and further relief as the court may deem just and proper.

## ON THE FOURTH CAUSE OF ACTION

### (Against All Defendants)

1.    That foreclosure and sale of the Subject Property be voided;

2.    That the trustee's deed upon sale should be cancelled and be of no force or effect;

3.    For an order declaring the equitable rights of the parties herein;

4.    That Plaintiffs have quiet title in the Subject Property as to each defendant, and that each such defendant has no right, title, estate, lien, or interest in the Subject Property or any part of it, adverse to Plaintiffs, or at all; and

5.    For such other and further relief as the Court deems just and proper.

## ON THE FIFTH CAUSE OF ACTION

### (Against defendants Cenlar, Ocwen and Freddie Mac)

1.    That foreclosure and sale of the Subject Property be voided;

2.    That the Trustee's Deed Upon Sale should be cancelled and be of no force or effect;

3.    For general, special, statutory, and actual damages according to proof at trial;

4.    For consequential and incidental damages;

5.    For reasonable attorney's fees and costs of suit incurred herein; and

6.    For such other and further relief as the court may deem just and proper.

## ON THE SIXTH CAUSE OF ACTION

### (Against All Defendants)

1.    For general, special, statutory, actual, and punitive damages according to proof at trial;

2.    For consequential and incidental damages;

3.    For maximum legal interest;

4.    For attorney's fees and costs incurred in connection with this action under Code

- 16 -

COMPLAINT

of Civil Procedure Section 1021.5;

5. For the equitable, injunctive and monetary relief permitted under Business & Professions Code Section 17203; and

6. All other relief the Court deems just and proper.

## ON THE SEVENTH CAUSE OF ACTION

### (Against defendants Freddie Mac and Cal-Western)

1. That foreclosure and sale of the Subject Property be voided;

2. That the trustee's deed upon sale should be cancelled and be of no force or effect;

3. For an order declaring the equitable rights of the parties herein;

4. That Plaintiffs have quiet title in the Subject Property as to each defendant, and that each such defendant has no right, title, estate, lien, or interest in the Subject Property or any part of it, adverse to Plaintiffs , or at all; and

5. For such other and further relief as the Court deems just and proper.

///
///
///

Dated: January 10, 2011

Respectfully submitted,
HOFFMAN & FORDE

Daniel Forde, Attorney for Plaintiffs
Charles and Kandhy Collins

- 17 -

COMPLAINT

I, Kandhy Collins, am a plaintiff in the above-entitled action. I have read the foregoing Complaint and I know the contents to be true except for those matters alleged on information and belief, and to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: January 10, 2011

_____
Kandhy Collins

COMPLAINT

## JURY DEMAND

Plaintiffs request that the trial in this case be by jury.

Dated: January 10, 2011

HOFFMAN & FORDE

Daniel Forde, Attorney for Plaintiffs
Charles and Kandhy Collins

## VERIFICATION

I, Charles Collins, am a plaintiff in the above-entitled action. I have read the foregoing Complaint and I know the contents to be true except for those matters alleged on information and belief, and to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: January 10, 2011

Charles Collins

## VERIFICATION

COMPLAINT